## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**3637, CORP., INC., a Florida
Corporation, and LUCKY'S
ARCADE, INC., a Florida
Corporation,**
        **Plaintiffs,**

**v.**                                        **Case No. 2018-_____**

**THE CITY OF MIAMI, a
Florida Municipal Corporation,
and DEVIN CEJAS, in his
Individual and Personal Capacity,**
        **Defendants.**
_____/

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### DAMAGES AND ATTORNEY'S FEES
### DEMAND FOR A JURY TRIAL

Plaintiffs, 3637 CORP., INC., a Florida Corporation and LUCKY'S ARCADE, Inc., a

Florida Corporation, sue Defendants, the CITY OF MIAMI, a Florida Municipal Corporation,

and DEVIN CEJAS, in his individual and personal capacity, and for their Complaint state as

follows:

### I.   PRELIMINARY STATEMENT

1.      This is an action to vindicate Plaintiffs' rights under the First, Fifth and

Fourteenth Amendments to the Constitution of the United States and under Article I, §§ 2 and 4

of the Constitution of the State of Florida.

2.      Since June, 2016, Defendants have undertaken actions and engaged in patterns of

behavior which were designed to, and which have, deprived Plaintiffs of their rights to present

First Amendment protected speech; to engage in a lawful business; to occupy their premises for

1

their intended purpose; to enjoy the benefits conferred on them by Defendant, City of Miami, in the issuance of building permits, the conducting of inspections, and the issuance of a Building Certificate/Certificate of Completion, obtain zoning for the sale of alcoholic beverages, and to otherwise lawfully conduct their business.

3.      All actions of Defendants complained of herein were actions under color of state law which were designed to, and which did, deny Plaintiffs rights guaranteed to them by the Constitution and laws of the United States.

## II.   JURISDICTION AND VENUE

4.      This is a cause of action arising under the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

5.      This complaint is also brought under 42 U.S.C. §§ 1983 and 1988:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Colombia, subjects or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit inequity or other proper proceeding for redress ...

6.      This Court has jurisdiction over this federal civil rights case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

7.      Jurisdiction over the supplemental state law claims asserted herein may be exercised by the Court pursuant to 28 U.S.C. § 1367.

8.      This is, in part, an action for damages in excess of $75,000 exclusive of interest, costs and attorney's fees.

9.    Pursuit and exhaustion of administrative remedies are not a prerequisite to an action, such as the instant action, brought under 42 U.S.C. § 1983.  The State law claims asserted by Plaintiffs, 3637 Corp., Inc., and Lucky's Arcade, Inc., in the applicable Counts asserting claims under Florida law are raised at this time to foreclose a later claim preclusion defense and, since they are predicated on the overarching Federal constitutional claims, are not subject to any conditions precedent or the provisions of § 768.28, Florida Statutes.

10.    Plaintiff, 3637, Corp., Inc., is a resident of, and doing business in Dade County, Florida.

11.    Plaintiff, Lucky's Arcade, Inc., is a resident of and doing business in Dade County, Florida.

12.    Defendant, City of Miami, resides in Dade County, Florida.

13.    Defendant, Devin Cejas, is, for the purposes of venue, a resident of Dade County, Florida.

14.    All events complained of herein occurred in Dade County, Florida.

15.    Accordingly, venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the parties are residents of this District and the events giving rise to the claims herein occurred in this District.

## III.   THE PARTIES- CORPORATE, OFFICIAL, AND INDIVIDUAL CAPACITIES

16.    Plaintiff, 3637, Corp., Inc., is a Florida corporation duly incorporated and operating under the laws of Florida, with its principal place of business in the City of Miami, Dade County, Florida.

17.    Plaintiff, 3637, Corp., Inc., is the tenant of Lucky's Arcade, Inc., for the premises

known municipally as 2651 NW 36th Street and 2630 NW 37th Street, Miami, Florida.

18.     Plaintiff, Lucky's Arcade, Inc., is a Florida corporation duly incorporated and operating under the laws of Florida, with its principal place of business in the City of Miami, Dade County, Florida.

19.     Plaintiff, Lucky's Arcade, Inc., is the owner of the real property known municipally as 2651 NW 36th Street and 2630 NW 37th Street, Miami, Florida and more particularly identified as Folio Numbers 01-3122-050-0040 and 01-3122-050-0011, respectively.

20.     Defendant, the City of Miami, is a Florida Municipal Corporation, organized and existing pursuant to Article VIII, § 2 of the Constitution of the State of Florida, and to Chapter 166, Florida Statutes.

21.     Defendant, Devin Cejas, is the Zoning Administrator for the City of Miami but, because Cejas' actions, complained of herein, go far beyond the authorized scope of his duties as City of Miami Zoning Administrator, including knowingly violating State law, committing perjury, and otherwise depriving Plaintiffs of their constitutional rights as described below, Cejas is sued in his individual and personal capacity and not in his official capacity.

22.     Defendant, Cejas, was acting outside of his official capacity and, therefore is liable in his personal capacity, by:

      a.    Acting without legal authority;

      b.    Personally directing and causing the deprivation of Plaintiffs' First and Fourteenth Amendment rights;

      c.    Having actual knowledge of, and agreeing to, and approving of, and acquiescing in, the deprivation of the First and Fourteenth Amendment

4

rights of Plaintiffs herein;

d.      Personally participating in the constitutional violations complained of herein, where there is clearly a causal connection between Cejas' actions and the constitutional deprivations complained of herein;

e.      Demonstrating deliberate indifference to the constitutional rights of Plaintiffs;

f.      Knowingly and intentionally combining, conspiring, confederating and agreeing with others presently unknown to Plaintiffs, to violate Plaintiffs' rights as accorded by the First and Fourteenth Amendment to the United States Constitution, and as described more fully in the Counts below;

g.      Clearly violating established constitutional rights of which a reasonable person would have known, especially one in his position;

h.      Knowingly and intentionally basing his action on false statements;

i.      Perjuring himself by making false statements in writing to other City of Miami entities to mislead those entities in the performance of their public duties; and

j.      Committing perjury in his sworn testimony to the City of Miami Planning, Zoning and Appeals Board, (hereinafter: "PZAB").

23.     The actions by the City of Miami and by Cejas were, at all times relevant hereto, actions under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usage of the State of Florida and the City of Miami, and under the direction and control of the City of Miami.

5

## IV.   GENERAL ALLEGATIONS

24.     3637 Corp., Inc., wishes to operate a commercial business on a property of approximately 1.16 acres of land, located on the north side of NW 36th Street just to the east of NW 27th Avenue.

25.     Plaintiff, Lucky Arcade, Inc., is the owner of the real property described in the preceding paragraph.

26.     For years, the northern portion of the building was used for an adult book and video store.

27.     Prior to the adoption of a "Form Based Zoning Code," the subject property was zoned C-2, Liberal Commercial.

28.     Permitted land uses in the C-2 Zoning District (pyramiding up from the C-1 Zoning District), include restaurants and "16.   Dancing and/or live entertainment at restaurants, tearooms, nightclubs and supper clubs, cafes or private clubs."

29.     Under the City's Form Based *Miami 21 Zoning Code*, the subject property is zoned T6-8-O, a category which permits uses similar to those uses permitted in the C-2 Zoning District, including the uses at issue herein.

30.     On April 6, 2009, 3637 Corp., Inc., applied to the City of Miami for zoning approval to convert a portion of the existing building for use as a bar and supper club, Exhibit "A," attached hereto and made a part hereof by reference.

31.     That application involved obtaining approval of a Special Exception for the proposed use although, by the plain language of the Zoning Code in effect in 2009, the bar/supperclub was a permitted use as of right.

32.     On June 8, 2009, the City of Miami Zoning Board adopted its Resolution ZB-R-09-0035 approving a Special Exception for a "bar/supper club establishment" on the Property, (the "2009 Approval"), Exhibit "B," attached hereto and made a part hereof by reference.

33.     The 2009 Approval was granted subject to three conditions:

      1)     "approval of this special exception shall run with this operator only; any changes to a different operator shall require a separate special exception;"

      2)     "signage details for the project shall be submitted to the planning department for review and approval by separate permit;" and

      3)     "establishment to have security and operate with permitted use."

34.     In addition, Resolution ZB-R-09-0035 required that a building permit for the proposed use be obtained within 12 months.

35.     In early 2010, 3637 Corp., Inc., applied for a modification to the Special Exception to extend the time in which 3637 was required to apply for a building permit.

36.     On May 10, 2010, the City of Miami Zoning Board again considered the proposed use, and adopted a second Resolution ZB-R-10-024, Exhibit C, attached hereto and made a part hereof by reference, granting an extension of time to allow 3637 Corp., Inc., to obtain a building permit for the bar/supper club use, (the "2010 Resolution").

37.     Collectively the 2009 Resolution and the 2010 Resolution comprise the Special Exception.

38.     On May 28, 2010, the Florida Legislature adopted Senate Bill 1752 ("SB 1752"),

(Exhibit D, attached hereto and made a part hereof by reference), which provided, *inter alia*, that development orders (including special exceptions and building permits), issued by local governments which had an expiration date of between September 1, 2008 and January 1, 2012 were extended and renewed for a period of two years after their original date of expiration.

39.     Within the time frame for obtaining the building permit, 3637 Corp., Inc., notified the City of Miami on December 23, 2011, that it intended to avail itself of the two year statutory extension of development approval time frames, (the Extension Request),  Exhibit E, attached hereto and made a part hereof by reference, and said extension was granted, Exhibit F, attached hereto and made a part hereof by reference.

40.     Subsequently, a timely request for building permit for the construction of the bar and supper club was submitted to the City's building department, Exhibit G, attached hereto and made a part hereof by reference.

41.     This request for a building permit was timely, pursuant to the granted Special Exception (Exhibits B and C through the operation of SB 1752 (Exhibit D,) as invoked by Plaintiff (Exhibit E).

42.     The City processed the request for building permit in 2013.

43.     By April 2013, the City Building department completed its review of the building permit application for the bar and supperclub, and was prepared to issue that permit.

44.     However, the building department claimed to have discovered that the underlying Special Exception approval had expired (See Exhibit H, attached hereto and made a part hereof by reference).

45.     Then counsel for the project advised the City that a notice of extension of time

under SB 1752 had been provided to the City, and that therefore the Special Exception had not expired, Exhibit I attached hereto and made a part hereof by reference.

47. The City subsequently determined that 3637 Corp., Inc.'s invocation of SB 1752 had tolled the time in which the building permit had to have been sought and deemed the building permit application to be timely.

47. On November 6, 2013, the master Building Permit, Permit No. BD13-025966-001-B001, (see Exhibit J, attached hereto and made a part hereof by reference), was issued for the remodeling of the premises for use as a supper club.

48. The master Building Permit, (see Exhibit J), **specifically identified** the intended use as a "supperclub."

49. Nine supplemental building permits were subsequently issued for specific components of the construction (see Composite Exhibit K, attached hereto and incorporated herein by reference).

50. 3637 Corp, Inc., then began construction of the bar and supper club, beginning with the complete demolition of the interior of the existing adult bookstore space.

51. Over the next approximately 32 months, 3637 Corp., Inc., made physical improvements to the interior of the club, and received and passed inspections from the City of Miami building department for the completed work. See Composite Exhibit K.

52. In 2015, the Building Permit was further amended to show the build out of the entire authorized space, see Composite Exhibit K.

53. In particular, 3637 Corp., Inc., installed interior walls, air conditioning, performance stages, lighting systems, sound systems, physical bar and counter tops, carpeting

and tile, light displays, mirrors, wall fixtures, furniture, a DJ booth and studio, refrigerators, bar ware and glass ware, kitchen equipment and other material associated with bar and supper club use, see Exhibit L, attached hereto and incorporated herein by reference.

54.     Of the ten building permits issued for the project, five, including the master permit, reference the zoning status of the project, and all five indicate "final zoning," "status: completed," "result: OK," and "remark: approved," as of May, 2016. [1]

55.     The master building permit also states: "all inspections are finalized," see Exhibit J.

56.     On June 20, 2016, the City of Miami issued a "Building Certificate," (Certificate of Completion) for the subject premises, Exhibit M, attached hereto and made a part hereof by reference.

57.     The Building Certificate is for the "Zoning Use" of a "supperclub," as an Assembly-2 use, with a permitted occupancy load of 65 persons.  The "supperclub" use was specifically a permitted use – not a Special Exception use – in the C-2 Zoning District applicable to the subject property.

58.     In addition to the above details, the Building Certificate states:

> This certificate is issued to the **above-named permit holder** for the building and premises at the above described location, and certifies that the work has been completed.

Exhibit M.   [Emphasis Added].

59.     The "named permit holder" is Lucky's Arcade, Inc.

60.     The Building Certificate/Certificate of Completion, thus is not issued to the

---

[1]   Four of the five are dated May 11, 2016, the fifth is dated May 5, 2016.

tenant, 3637 Corp., Inc., but to the property owner, Lucky's Arcade, Inc.

61.     The Building Certificate/Certificate of Completion, is one of two approvals that must be granted by the City of Miami prior to the occupancy of a new or remodeled building.

62.     The Building Certificate/Certificate of Completion, is the approval of the building as being safe to occupy: *i.e.,* that it is structurally sound, that fire prevention and protection requirements have been met, that plumbing and electrical have been constructed to code and are safe to use, *etc.*

63.     Prior to the occupancy of a new or remodeled building, the City of Miami also requires that the building be granted a "Certificate of Use," certifying that the proposed use complies with the City's zoning requirements.

64.     Seven days after the Building Certificate was issued, the principal of 3637 Corp., Inc., began to contact Defendant Cejas to schedule a meeting regarding obtaining the required Certificate of Use, Exhibit N, attached hereto and made a part hereof by reference.

65.     Approximately three weeks later, the principal of 3637 Corp., Inc., and Defendant Cejas did meet to discuss the issuance of a Certificate of Use.

66.     The outcome of said meeting was that Cejas undertook to "research the status" of the property and its eligibility for a Certificate of Use.

67.     In addition to the refusal to properly administer the various building and zoning issues associated with the subject property, the Defendants also refused to "sign off" on a Florida Department of Alcoholic Beverages (DABT) license application, which had previously been approved by the Florida Department of Revenue and the Division of Hotels and Restaurants under the Department of Business and Professional Regulation (DBPR). See Exhibit O, attached

11

hereto and incorporated herein by reference.

68.     In spite of constant, numerous and repeated efforts by the principal of 3637 Corp., Inc., over the next nine months, Defendant Cejas and the City of Miami failed and refused to respond with respect to the status of the Certificate of Use or to take any other action related thereto.

69.     This failure by the City of Miami and especially by Defendant Cejas, to respond was malicious, was done in the absence of any legitimate governmental purpose, displayed a deliberate indifference to Plaintiffs' rights; was done in concert with other, presently unknown, agents of the City of Miami; was done with clear knowledge that this failure to respond violated Plaintiffs' rights; was based on Cejas' own false statements and false statements by others; and was done without legal authority.

70.     In March, 2017, the City's Zoning Administrator issued an undated letter advising that the City was denying the request for a certificate of use (the "Denial Letter"), Exhibit H.

71.     The Denial Letter identified four grounds for not issuing the certificate of use:

a.     A claim that 3637 Corp., Inc., failed to meet a condition of the Special Exception to replat the Property;

b.     A claim that the Special Exception had expired due to failure to timely obtain a building permit;

c.     A claim that the 2009 Special Exception should not have been originally granted due to another liquor use being within required spacing distances; and

d.     A claim that the operator of the facility had changed, in violation of the

condition of the Special Exception.

72.     3637 Corp., Inc., timely filed an administrative appeal of the Denial Letter to the City's Planning and Zoning Board, Exhibit P, attached hereto and made a part hereof by reference.

73.     3637 Corp., Inc., also submitted to the City a request for public records pursuant to Chapter 119, Florida Statutes, Exhibit Q attached hereto and made a part hereof by reference. Among other information relating to the Property, 3637 Corp. specifically asked the City to provide any public records containing:

   a.     Any information collected by the City with regard to the beneficial ownership in a corporation, company, limited partnership or such other legal entity designated as the operator of a Supper Club on any Special Exception application processed pursuant to the requirements of Ordinance 11000 or any Exception application processed pursuant to the requirements of Miami 21 requesting the approval of such a use between January 1, 2002, and April 1, 2017; and

   b.     Any information collected by the City with regard to the approval of a change in the beneficial ownership of a corporation, company, limited partnership or such other legal entity previously authorized by the City to operate a Supper Club use between January 1, 2002, and April 1, 2017.

74.     In response to this request, the City produced no documentation that would have

13

supported, or have tended to support its patently unlawful position with respect to the application *sub judice,*

76.     Plaintiff, 3637 Corp., Inc., timely appealed Cejas' decision to the City of Miami PZAB.

76.     On June 7, 2017, the PZAB denied the appeal by a vote of four to three, Exhibit R attached hereto and made a part hereof by reference.

77.     3637 Corp., Inc., pursuant to the provisions of the City of Miami zoning regulations, appealed the PZAB decision to the Miami City Commission.

78.     On July 27, 2017, the Miami City Commission affirmed the PZAB decision by a unanimous vote, Exhibit S, attached hereto and made a part hereof by reference.

79.     3637 Corp., Inc., (but not Lucky Arcade, Inc.), has sought certiorari review of that decision in the Appellate Division of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, (Case No. 2017-000334-AP-01).

80.     The Defendants, individually, and in concert, inflicted damage on Plaintiffs that was wanton, intentional, malicious, willful, and with reckless indifference to the rights of 3637 Corp., Inc., and Lucky's Arcade, Inc.,  and without any pretext whatsoever as being in fulfillment of a legitimate purpose.

81.     Plaintiffs assert that their positions, set forth in this Complaint, are legally sound and supported by fact and law.  The Defendants' actions, however, have created a *bona fide* controversy between the parties and Plaintiffs are in doubt as to their rights, privileges and immunities with respect to the matters at issue.  Plaintiffs require, therefore, a declaratory judgment declaring their rights, privileges and immunities.

82.     As to Counts seeking injunctive relief, Plaintiffs have no adequate remedy at law. No amount of money damages could adequately compensate the Plaintiffs for the irreparable harm that would occur if the City is permitted to silence protected speech by the enforcement of the unconstitutional and unlawful regulations, and by the employment of the unconstitutional and unlawful procedures, at issue herein.

83.     Plaintiffs have suffered actual, consequential and special damages as a result of the actions of the City, as alleged herein, which actions were all taken and implemented under the color of state law.

84.     Plaintiffs have been required to retain the undersigned attorney and to pay him a reasonable fee for his services in this action.

<u>COUNT I</u>
<u>THE UNCONSTITUTIONAL SILENCING OF PROTECTED SPEECH</u>
<u>DECLARATORY AND INJUNCTIVE RELIEF</u>
<u>(Original Jurisdiction)</u>

85.     Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

86.     This is an action for declaratory and injunctive relief.

87.     Plaintiffs seek the Certificate of Use at issue herein to present to the public at large dance performances that are protected by the First Amendment to the Constitution of the United States and by Article I, § 4 of the Constitution of the State of Florida.

88.     The City of Miami's administration of its Certificate of Use requirements operated and continue to operate, as an unconstitutional prior restraint against protected expression and woefully and abjectly lack the substantive and procedural safeguards required for

a prior restraint in violation of the First Amendment to the Constitution of the United States and of Article I § 4 of the Constitution of the State of Florida.

89.     There are no time limits whatsoever, let alone specified brief time limits, for the approval of supper clubs offering entertainment in the form of protected speech pursuant to the City of Miami's Certificate of Use process, in violation of the First Amendment to the Constitution of the United States and of Article I § 4 of the Constitution of the State of Florida.

90.     The City of Miami's and Cejas' failure and refusal to respond to Plaintiffs' numerous and repeated demands for the issuance of a Certificate of Use operated as a violation of Plaintiff's right to free expression in violation of the First Amendment to the Constitution of the United States and of Article I § 4 of the Constitution of the State of Florida.

91.     The City of Miami's processing and ultimate denial of the Certificate of Use were unconstitutionally content-based.

92.     The delay in processing and ultimate denial do not apply to other City approvals for other businesses or entertainment that do not offer sexually oriented speech.

93.     This delay and ultimate denial in violation of the First Amendment to the Constitution of the United States and of Article I § 4 of the Constitution of the State of Florida, applied only to one supper club offering sexually oriented dance.

94.     The City of Miami's and Cejas' delays in responding to demands for the issuance of the Certificate of Use, and ultimate denial thereof, violated Plaintiffs' rights under the First Amendment to the Constitution of the United States made applicable to the states by the Fourteenth Amendment, violated Plaintiffs' right to free speech and expression since said delays occurred over a period of approximately nine months and thus constituted an essentially

16

indefinite prohibition against free expression and against a permitted land use.

95.     The City of Miami's and Cejas's delay and denial of the necessary approvals from the City for Plaintiffs to open and operate their proposed supper club violate Plaintiffs' due process rights under the Fourteenth Amendment to the Constitution of the United States, are arbitrary, capricious, and unreasonable under the Fourteenth Amendment's due process clause and are in violation of the First Amendment to the Constitution of the United States and of Article I § 4 of the Constitution of the State of Florida.

96.     The actions complained of in this Count are actions under color of state law and are violations of Plaintiffs' civil rights for which Plaintiffs are entitled to relief pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.      A Declaratory Judgment declaring the City of Miami Certificate of Use process to be violative of the aforementioned federal and state constitutional and statutory provisions;

b.      Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the Certificate of Use process in whole or in part against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of permanent Certificate of Use after the proper administration of this action;

c.      Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were

all taken and implemented under the color of state law;

d.       Awarding Plaintiffs all applicable attorney's fees the costs of this action and such

other and further relief as this Court deems fit, just, proper and equitable.

**COUNT II**
**THE CITY'S DELAY AND DENIAL OF THE CERTIFICATE OF USE ARE**
**UNREASONABLE AND UNNECESSARY AND LACK ANY PREDICATE**
**SHOWING PLAINTIFFS' PROPOSED BUSINESS WILL CAUSE**
**ADVERSE SECONDARY EFFECTS**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

97.      Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set

forth fully herein.

98.      This is an action for declaratory and injunctive relief.

99.      Assuming *arguendo* that there is any basis for the content-correlated regulation of

sexually-oriented Adult Uses, including the delay and denial of the Certificate of Use for the

supper club at issue herein, it is clear that there is no predicate whatsoever for the regulation of

supper clubs such as that proposed by Plaintiffs, – *i.e.*, bona fide restaurants offering some

sexually oriented dance.

100.     The relevant literature and relevant case law fail to provide any support for the

regulation of supper clubs offering sexually oriented dance.

101.     The City of Miami's and Cejas' delay and denial of the Certificate of Use

approval at issue herein violate the rights guaranteed Plaintiffs by the United States Constitution,

on their face and as applied to Plaintiffs, as an unlawful exercise of the state's police power in

that there is no substantial relationship to the protection of the public health and welfare or any

legitimate governmental objective, resulting in the fact that there has been no proper predicate for

18

the basis of the challenged actions, particularly as they apply to supper clubs.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.  A Declaratory Judgment declaring that the City of Miami's and Cejas' processing of the Certificate of Use application to be violative of the aforementioned federal and state constitutional and statutory provisions because there is no predicate for the application of this process to supper clubs such as that proposed by Plaintiffs;

b.  Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of permanent Certificate of Use after proper administration of the complaint herein;

c.  Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.  Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

**COUNT III**
**FEDERAL PROCEDURAL DUE PROCESS DICTATES THAT DEFENDANTS ARE EQUITABLY ESTOPPED FROM DENYING THE CERTIFICATE OF USE DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

102.  Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

103.     This is an action for declaratory and injunctive relief.

104.     From the approval of the extension of time in which to apply for their building permit to the time when the Certificate of Use was denied, Plaintiffs spent in excess of $1,713,339.34 on the improvement of their premises leading up to the issuance of the Building Certificate, Exhibit M.

105.     Included in this $1,713,339.34 were $42,727.32 in impact fees payable to the City of Miami or related governmental entities.

106.     Also included in this $1,713,339.34 were $140,292 in property taxes over the time frame at issue.

107.     Not directly included in this $1,713,339.34 were the permit fees paid to the City of Miami. [2]

108.     During the processing of the application for the Certificate of Use, the City was advised that, due to the expenditures that had been made in reliance on the Special Exception, the City was equitably estopped from denying the issuance of the building permit to build the bar and supper club authorized under the Special Exception, Exhibit T, attached hereto and made a part hereof by reference.

109.     In an email dated September 26, 2013, Ms. Maria Chiaro of the City Attorney's office confirmed that she agreed with counsel's conclusion that the City was equitably estopped from issuing the requested building permit, Exhibit T.

110.     The City issued its accepted and verified Extension of the Board Order pursuant to SB 1752 on October 30, 2013 (the "City Extension"), Exhibit F.

---

[2]   The $1,713,339.34 does include $12,000 paid to a "plans runner" which may include some actual permit fees.

111.    On November 6, 2013, the City of Miami issued the Master Building Permit for the remodeling of the premises, (Exhibit J).

112.    On June 20, 2016, the City issued its Building Certificate/Certificate of Completion to Plaintiff, Lucky's Arcade, Inc., (Exhibit M).

113.    Cejas did not base his approval or disapproval of the Certificate of Use application, made subsequent to the issuance of the Building Certificate, upon the regulations and requirements contained in the City Code and but rather upon alleged broad powers of discretion that Cejas claimed to enjoy in the administration of the City's zoning regulations.

114.    As such, the Cejas acted in a discretionary capacity rather than in the required administrative capacity.

115.    Cejas went outside of the Code to find independent sources of authority for disapproving the Certificate of Use.

116.    In doing so, Cejas used unpublished requirements capable of general application, previously held in reserve, for use as the City deems desirable.

117.    The defendants thus impermissibly imposed *ad hoc* requirements regarding the ownership of the applicant corporation.

118.    However, the principles of federal, constitutional, procedural due process dictate that the City and Cejas be found to be equitably estopped from denying Plaintiffs the Certificate of Use.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that federal, constitutional, procedural due

process demands that the City of Miami's and Cejas' are equitably estopped from denying the Certificate of Use application as such denial is violative of the aforementioned federal and state constitutional and statutory provisions;

b.    Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.    Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.    Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

### COUNT IV
### DEFENDANTS ARE EQUITABLY ESTOPPED FROM
### DENYING THE CERTIFICATE OF USE
### DECLARATORY AND INJUNCTIVE RELIEF
### (Supplemental Jurisdiction)

119.    Plaintiff, Lucky's Arcade, Inc., re-alleges and incorporates herein paragraphs 1 through 84 above as if set forth fully herein.

120.    This is an action for declaratory and injunctive relief solely as to Plaintiff, Lucky's Arcade, Inc.

121.    From the approval of the extension of time in which to apply for their building permit to the time when the Certificate of Use was denied, Plaintiffs spent in excess of

$1,713,339.34 on the improvement of their premises (Exhibit U, attached hereto and made a part hereof by reference), leading up to the issuance of the Building Certificate, Exhibit M.

122.     Included in this $1,713,339.34 were $42,727.32 in impact fees payable to the City of Miami or related governmental entities.

123.     Also included in this $1,713,339.34 were $140,292 in property taxes over the time frame at issue.

124.     Not directly included in this $1,713,339.34 were the permit fees paid to the City of Miami. [3]

125.     During the processing of the application for the Certificate of Use, the City was advised that, due to the expenditures that had been made in reliance on the Special Exception, the City was equitably estopped from denying the issuance of the building permit to build the bar and supperclub authorized under the 2009 Special Exception, Exhibit T.

126.     In an email dated September 26, 2013, Ms. Maria Chiaro of the City Attorney's office confirmed that she agreed with counsel's conclusion that the City was equitably estopped from issuing the requested building permit, Exhibit T.

127.     The City issued its accepted and verified Extension of the Board Order pursuant to SB 1752 on October 30, 2013 (the "City Extension"), Exhibit F.

128.     On November 6, 2013, the City of Miami issued the Master Building Permit for the remodeling of the premises, (Exhibit J).

129.     On June 20, 2016, the City issued its Building Certificate/Certificate of Completion to Plaintiff, Lucky's Arcade, Inc., (Exhibit M).

---

[3]   The $1,713,339.34 does include $12,000 paid to a "plans runner" which may include some actual permit fees.

130.    Cejas did not base his approval or disapproval of the Certificate of Use application, made subsequent to the issuance of the Building Certificate upon the regulations and requirements contained in the City Code and but rather upon alleged broad powers of discretion that Cejas claimed to enjoy in the administration of the City's zoning regulations.

131.    As such, the Cejas acted in a discretionary capacity rather than in the required administrative capacity.

132.    Cejas went outside of the Code to find independent sources of authority for disapproving the Certificate of Use.

133.    In doing so, Cejas used unpublished requirements capable of general application, previously held in reserve, for use as the City deems desirable.

134.    The defendants thus impermissibly imposed *ad hoc* requirements regarding the ownership of the applicant corporation.

135.    Further, Defendant, the City of Miami acted by:

a.    Approving the 2009 Special Exception;

b.    Approving the 2010 Special Exception approving an extension of the time in which Plaintiffs were required to apply for a building permit;

c.    Accepting Plaintiff's extension of the building permit pursuant to SB 1752;

d.    Issuing a master building permit for the project;

e.    Issuing nine subordinate building permits for the project;

f.    Conducting multiple inspections of the premises pursuant to the 10 building permits issued for the project (See composite Exhibits J and K)

g.    Accepting the payment for building permit fees and impact fees well in excess of $25,000 for the project; and

h.    Issuing a Building Certificate/Certificate for the project.

136.   The foregoing actions of the City of Miami thereby offered Plaintiffs a welcome mat and invited Plaintiffs to conduct business as they proposed to do so, at their proposed location.

137.   Plaintiffs reasonably relied on the actions of the City described above.

138.   Plaintiffs' reasonable reliance on the actions of the City of Miami was to Plaintiffs' detriment.

139.   The City of Miami is thus equitably estopped from denying Plaintiff, Lucky's Arcade, Inc., the requested Certificate of Use.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that, as a matter of state law, that the City of Miami's and Cejas' are equitably estopped from denying Plaintiff, Lucky Arcade, Inc., the requested Certificate of Use;

b.    Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiff, Lucky's Arcade, Inc., and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

25

c.      Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.      Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

<u>**COUNT V**</u>
<u>**THE PRETEXTUAL AND ERRONEOUS NATURE OF CEJAS' DENIAL**</u>
<u>**OF THE OF USE OF THE OPERATOR ISSUE CERTIFICATE**</u>
<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>
<u>**(Original Jurisdiction)**</u>

140.    Plaintiff, Lucky Arcade, Inc., re-alleges and incorporates herein paragraphs 1 through 84 above as if set forth fully herein.

141.    This is an action for declaratory and injunctive relief solely as to Plaintiff, Lucky Arcade, Inc.

142.    One pretext used by Defendant Cejas for denying the Certificate of Use demanded by Plaintiffs is that a condition of approval of the Special Exception was that the Special Exception "runs with this operator only," (Exhibit H at 2).

143.    At the time of the application for the special exception, the stock of 3637 Corp., Inc., was owned by two individuals, Martin Hodas and Jerrett Hodas, Exhibit V, attached hereto and made a part hereof by reference.

144.    In early 2013, Mr. Jim Fulford acquired ownership of the stock of 3637 Corp. and assumed the role of President of that corporation, Exhibit W, attached hereto and made a part hereof by reference.

145.    The condition of approval did not read that Special Exception "runs with this

26

**owner** only."

146.    The term: "operator" is not defined in the City of Miami Zoning Regulations.

147.    However, the term: "operator" is defined in § 46.1 of the City of Miami Code:

> For the purpose of this chapter "operator" means an owner or
> person having possession or charge of as agent or otherwise having
> interest in or control of the building, place or premises.

148.    The foregoing definition is consistent with definitions found in Florida common law.

149.    Therefore, as a matter of fact, the change in shareholders of 3637 Corp., Inc., did not represent a change in the operator of the proposed business.

150.    Further, the change in shareholders of 3637 Corp., Inc., occurred months before the City of Miami issued the building permits at issue herein.

151.    The absurdity of the position taken by Cejas and the City, that a change in principals or shareholders in a corporation equates to a "change in operator," is that their argument, if taken to its logical conclusion, would mean that any action taken by the Miami City Commission would be valid only as long as the same commissioners are members of the Commission.

152.    Likewise, RCI Hospitality Holdings, Inc., (NASDAQ RICK), is a publicly traded corporation which owns and operates adult cabarets.

153.    On December 14, 2017, 207,165 shares of RICK were traded on the NASDAQ exchange.

154.    By the City's reasoning as applied to Plaintiffs, if even one of those 207,165

shares was purchased by a first time investor in RICK, all previous approvals granted to RICK would be null and void.

155.    Therefore, Cejas' alleged basing of his belated refusal to issue the Certificate of Use was pretextual in nature and not grounded on any appropriate interpretation of the law or of the facts.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that Cejas' stated reason for refusing to issue the requested Certificate of Use, related to the operator of the business, was pretextual in nature and is therefore null and void;

b.    Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.    Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.    Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

## COUNT VI
## THE PRETEXTUAL AND ERRONEOUS NATURE OF CEJAS' DENIAL OF THE CERTIFICATE OF USE THE COMPETING USE ISSUE DECLARATORY AND INJUNCTIVE RELIEF

### (Original Jurisdiction)

156.     Plaintiff, Lucky's Arcade, Inc., re-alleges and incorporates herein paragraphs 1 through 84 above as if set forth fully herein.

157.     This is an action for declaratory and injunctive relief solely as to Plaintiff, Lucky's Arcade, Inc.

158.     One pretext used by Defendant Cejas for denying the Certificate of Use demanded by Plaintiffs is the false claim that another establishment, *New L'Boulevard Café,* located at 3632-34 NW 25th Avenue, had active alcoholic beverage approvals at the relevant times in:

> a.     2009, at the time of the approval of the original Special Exception for Plaintiff;
>
> b.     2010, at the time of the approval of the extension of the 2009 Special Exception;
>
> c.     2011, when the Special Exception was extended pursuant to the operation of SB 1752; and
>
> d.     November, 2013, when the master Building Permit was issued.

159.     In fact, *New L'Boulevard* did have an alcoholic beverage license issued in 2001, (No. 4COP-BEV2324601), but said license expired on March 31, 2007, and, as of 2009, 2010, 2011 and 2013, the establishment was closed and the alcoholic beverage license deemed null and void, Composite Exhibit X, attached hereto and made a part hereof by reference.

160.     Further, in November, 2007, Plaintiff,, 3637 Corp.,   secured s Certificate of Use for a 4-COP alcoholic beverage package store for the subject property, Certificate of Use No. 07017519,   Exhibit Y, attached hereto and made a part hereof by reference.

161.    The purpose of securing said license was to prevent a new use from securing alcoholic beverage licensing that would interfere with the use of the subject premises.

162.    Thus, at no relevant time, was there a valid alcoholic beverage license within the disqualifying distance of the subject premises.

163.    Therefore, Cejas' alleged basing of his belated refusal to issue the Certificate of Use was pretextual in nature and not grounded on any appropriate interpretation of the law or of the facts.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.      A Declaratory Judgment declaring that Cejas' stated reason for refusing to issue the requested Certificate of Use, related to the allegedly competing business. was pretextual in nature and is therefore null and void;

b.      Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, and directing that the City approve the zoning clearance on any applicable DABT application, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.      Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.      Awarding Plaintiffs all applicable attorney's fees the costs of this action and such

30

other and further relief as this Court deems fit, just, proper and equitable.

**COUNT VII**
**PERJURY BY CEJAS**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

164.    Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

165.    This is an action for declaratory and injunctive relief.

166.    In addition to belatedly sending the denial letter (Exhibit H), to Plaintiffs, Cejas also submitted the same letter to the PZAB in support of his opposition to Plaintiffs' appeal of the denial of the Certificate of Use.

167.    Cejas also submitted the denial letter to the City Commission in support of his opposition to Plaintiffs' appeal of the denial of the Certificate of Use.

168.    Section 837.06, F.S, provides:

> Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty shall be guilty of a misdemeanor of the second degree, punishable as provided ...

169.    Cejas' denial letter reads in pertinent part:

> Conditions that were not met are as follows:

> > Approval of this Special Exception is conditioned to [*sic*] the re-platting of the property prior to obtaining any Building Permit ...

Exhibit H at 2.

170.    In fact, no such condition was imposed on the grant of the Special Exception,

Exhibit B.

171.    Cejas thus knowingly made a false statement in writing with the intent to mislead a public servant (the PZAB) in the performance of its official duty. [5]

172.    Cejas submitted the denial letter to both the Planning Board and the City Council.  The denial letter contained material false statements of fact and was submitted to the Planning Board and the Council to induce them to act.

173.    In Cejas' sworn testimony to the Planning Board, he also made these perjurious statements. Tape 1.04.15 - 1.06.21.

174.    Said perjury was committed under color of state law with the intent of depriving Plaintiffs of rights guaranteed to them by the Constitution and Laws of the United States.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that Cejas committed perjury in his written submittal to the PZAB;

b.    Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.    Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were

---

[4]   In the course of the PZAB hearing, the falsity of this statement was proven and, although Cejas apparently submitted the same letter to the City Commission, it does not appear that he intended for the Commission to rely on this issue.

all taken and implemented under the color of state law;

d.     Awarding Plaintiffs all applicable attorney's fees the costs of this action and such

other and further relief as this Court deems fit, just, proper and equitable.

**COUNT VIII**
**DENIAL OF PROCEDURAL DUE PROCESS**
***ULTRA VIRES* ADMINISTRATION OF THE CITY ZONING REGULATIONS**
**ZONING RUNS WITH THE LAND**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

175.    Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set

forth fully herein.

176.    This is an action for declaratory and injunctive relief.

177.    The process for processing an application for a Certificate of Use, and for the

ultimate grant or denial of the Certificate was found in The City of Miami Zoning Ordinance,

Ordinance 11000.

178.    The process for processing an application for a Certificate of Use, and for the

ultimate grant or denial of the Certificate is now found in *Miami 21*, the City's "form-based"

zoning regulations.

179.    Therefore, application of the Certificate of Use process is part of the City's zoning

regulations and process.

180.    In Florida, zoning runs with the land.

181.    The burdens imposed, or the benefits conferred, by zoning regulations are an

impediment to, or benefit for, the use and enjoyment of the property by successors in interest to

the property.

182.    Further, approval of a Special Exception runs with the land and is not a personal license given to the landowner.

183.    Accordingly, the City of Miami granted the property owner a constitutionally protected property interest in the approval of the Special Exception and now, acting under color of state law, in violation of the Constitution and laws of the United States, seeks to take said protected property interest from Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that the Special Exception granted for the construction of a supper club on the subject property runs with the land and cannot be vitiated by any alleged "change in the operator" of the supper club;

b.    Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.    Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.    Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

**COUNT IX**
**DENIAL OF PROCEDURAL DUE PROCESS**

### *ULTRA VIRES* ADMINISTRATION OF THE CITY ZONING REGULATIONS
### STRICT CONSTRUCTION OF ZONING ORDINANCES
### DECLARATORY AND INJUNCTIVE RELIEF
### (Original Jurisdiction)

184.    Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

185.    This is an action for declaratory and injunctive relief.

186.    The process for processing an application for a Certificate of Use, and for the ultimate grant or denial of the Certificate was found in The City of Miami Zoning Ordinance, Ordinance 11000.

187.    The process for processing an application for a Certificate of Use, and for the ultimate grant or denial of the Certificate is found in *Miami 21*, the City's "form-based" zoning regulations.

188.    Therefore, application of the Certificate of Use process is part of the City's zoning regulations and process.

189.    In Florida, zoning is in derogation of private property rights and, therefore, must be strictly construed against the government and liberally construed in favor of the property owner.

190.    Accordingly, the City of Miami granted the property owner a constitutionally protected property interest in the approval of the Special Exception and now, acting under color of state law, in violation of the Constitution and laws of the United States, seeks to take said protected property interest by liberally construing the zoning regulations in its favor.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following

relief:

a.     A Declaratory Judgment declaring that the City is impermissibly and unconstitutionally liberally construing its Ordinance in its own favor;

b.     Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.     Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.     Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

<u>**COUNT X**</u>
<u>**DENIAL OF PROCEDURAL DUE PROCESS**</u>
<u>***ULTRA VIRES* ADMINISTRATION OF THE CITY ZONING REGULATIONS**</u>
<u>**THE ZONING ADMINISTRATOR LACKS THE AUTHORITY**</u>
<u>**TO "CONSTRUE" THE ZONING REGULATIONS**</u>
<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>
<u>**(Original Jurisdiction)**</u>

191.    Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

192.    This is an action for declaratory and injunctive relief.

193.    The process for processing an application for a Certificate of Use, and for the ultimate grant or denial of the Certificate was found in The City of Miami Zoning Ordinance,

36

Ordinance 11000.

194.    The process for processing an application for a Certificate of Use, and for the ultimate grant or denial of the Certificate is found in *Miami 21*, the City's "form-based" zoning regulations.

195.    Therefore, application of the Certificate of Use process is part of the City's zoning regulations and process.

196.    Terms used in a zoning ordinance must make reference to determinable criteria, and provide a context in which a court can determine a particular regulation is reasonable.

197.    No legislative body, (*e.g.*, the City of Miami Commission), can delegate to an administrator arbitrary discretion to determine the meaning of a zoning code.

198.    Yet, that is precisely what has occurred in the case *sub judice*.

199.    While the term: "operator" used in the grant of the Special Exception for the subject property, is defined favorably to Plaintiffs elsewhere in the City of Miami Code, it is not defined in the City Zoning Regulations.

200.    Accordingly, Defendant Cejas has delegated to himself the arbitrary discretion to determine the meaning of a zoning code, in derogation of the Constitution and of Plaintiffs' constitutionally protected property rights.

201.    If such standards or criteria do not exist, the zoning provision is a nullity.

202.    Accordingly, the City of Miami granted the property owner a constitutionally protected property interest in the approval of the Special Exception and now, acting under color of state law, in violation of the Constitution and laws of the United States, seeks to take said protected property interest by unlawfully delegating to the Zoning Administrator the right to

arbitrarily determine the meaning of terms not defined in the Regulations.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.      A Declaratory Judgment declaring that the City is impermissibly and unconstitutionally delegating to the Zoning Administrator the right to construe the City's Zoning Regulations;

b.      Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.      Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.      Awarding Plaintiffs all applicable attorney's fees the costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

**COUNT XI**
**INADEQUATE ALTERNATIVE AVENUES OF COMMUNICATION**
**FOR SEXUALLY ORIENTED ADULT USES**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

203.      Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

204.      This is an action for declaratory and injunctive relief.

205.    Article 4, Table 3, of *Miami 21* permits sexually oriented Adult Uses only in the D2, Industrial, Transect Zoning District.

206.    Article 6, Table 13, Supplemental Regulations, of *Miami 21* establishes the City's Adult Use Zoning Regulations and their locational provisions.

207.    Article 6, Table 13, Supplemental Regulations, of *Miami 21* specifically prohibits sexually-oriented Adult Uses from locating within 1,000 feet of property zoned for residential use.

208.    Yet property zoned D2 is zoned for residential uses since it permits "rescue missions" which have the residential purpose of providing temporary residential shelter.

209.    Thus, sexually-oriented Adult Uses are prohibited in the very zoning district in which they are allegedly permitted.

210.    Sexually-oriented Adult Uses are also prohibited in the Comprehensive Plan Designation, Industrial, which underlies the D2 Zoning District.

211.    When there is a conflict between a comprehensive plan and a zoning regulation, the comprehensive plan governs.

212.    Therefore, by operation of the City's planning documents, there is no place anywhere in the City of Miami where a sexually-oriented Adult Use can open and operate.

213.    Further, upon information and belief, no land in the D2 Transect Zoning District meets the segregation requirements of *Miami 21*.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.    A Declaratory Judgment declaring that the City has unconstitutionally failed to

39

provide adequate alternative avenues of communication for sexually-oriented Adult Uses;

b.      Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.      Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law;

d.      Awarding Plaintiff the all applicable attorney's fees and costs of this action and such other and further relief as this Court deems fit, just, proper and equitable.

**COUNT XII**
**DENIAL OF PROCEDURAL DUE PROCESS**
***MIAMI 21's* PROHIBITION AGAINST VARIANCES**
**FROM THE ADULT USE ZONING REGULATIONS**
**IS UNCONSTITUTIONAL**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(Original Jurisdiction)**

214.    Plaintiffs re-allege and incorporate herein paragraphs 1 through 84 above as if set forth fully herein.

215.    This is an action for declaratory and injunctive relief.

216.    Article 6, Table 13, Supplemental Regulations, of *Miami 21* establishes the City's Adult Use Zoning Regulations and their locational provisions.

217.    Article 6, Table 13, Supplemental Regulations, of *Miami 21* specifically prohibits

40

variances from said locational criteria.

218.   The purpose of a variance is to afford a safety valve, so that the carrying out of the strict letter of the Zoning Ordinance may not occasion unnecessary hardship to particular property owners.

219.   The variance is designed to preserve the constitutionality of the legislation.   It is invoked to avoid the confiscatory effect that would follow a literal enforcement of some term of a zoning ordinance operating to deprive an owner of all beneficial use of his land.

220.   The hardship contemplated in this legislation has constitutional overtones, and it is the purpose of the variance to immunize zoning legislation against attack on the grounds that it may in some instances operate to effect a taking of property without just compensation.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the following relief:

a.   A Declaratory Judgment declaring that the City has unconstitutionally prohibited variances from its adult use zoning regulations;

b.   Appropriately set and hold a hearing, and preliminarily enjoin Defendants from applying and enforcing the challenged process, in whole or in part, against Plaintiffs, and mandating that a temporary Certificate of Use be issued forthwith, with the subsequent entry of a permanent injunction and issuance of a permanent Certificate of Use after proper administration of the complaint herein;

c.   Awarding Plaintiffs all actual, consequential, and special damages resulting from of the actions of the Defendants complained of in this Count, which actions were all taken and implemented under the color of state law.

d.    Awarding Plaintiffs all applicable attorney's fees the costs of this action and such

other and further relief as this Court deems fit, just, proper and equitable.

## **DEMAND FOR A JURY TRIAL**

A jury trial is demanded for all issues so triable.

Dated: January 30, 2018                              Respectfully Submitted,

/s/Luke Lirot_____
Luke Lirot, Esq.
Florida Bar Number 714836
LUKE CHARLES LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
*Attorney for the Defendants*
luke2@lirotlaw.com   (primary e-mail)
jimmy@lirotlaw.com   (secondary e-mail)
justin@lirotlaw.com (secondary e-mail

42